IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No.  09-cv-02802-REB-MEH

JEREMY C. MYERS, and
GREAT WESTERN SALVAGE LTD.

　　　　Plaintiffs,

v.

BRIAN KOOPMAN, Detective in the Loveland, Colorado Police department, in his
　　　　official and individual capacity;
LUKE HECKER, Chief of Loveland Police Department, in his official and individual
capacity;
DENNIS V. HARRISON, Chief of the Fort Collins Police Department, in his official and
　　　　individual capacity;
JAMES A. ALDERDEN, Sheriff of Larimer County, Colorado, in his official and individual
　　　　capacity;
CITY OF LOVELAND, Colorado, a municipality;
CITY OF FORT COLLINS, Colorado, a municipality;
LARIMER COUNTY, a County, by and through the
LARIMER COUNTY BOARD OF COUNTY COMMISSIONERS;
LARRY ABRAHAMSON, District Attorney of the Eighth Judicial District in his official
　　　　capacity; and
EIGHTH JUDICIAL DISTRICT OF COLORADO, a political subdivision of the State of
　　　　Colorado,

　　　　Defendants.

---

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

---

Blackburn, J.

　　　　This matter is before me on the following: (1) **Defendants Koopman and**

**Hecker's Motion for Summary judgment Based Upon Qualified** Immunity [#56][1] filed

April 20, 2010; (2) **Dennis V. Harrison and the City of Fort Collins' Motion for**

---

[1]　"[#56]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

**Summary Judgment** [#74] filed June 11, 2010; (3) **Defendant James A. Alderden,**

**Larimer County, Larimer County Board of County Commissioners, Larry**

**Abrahamson and Eighth Judicial District of Colorado's Motion for Summary**

**Judgment** [#86] filed September 1, 2010; and (4) **Defendant City of Loveland's**

**Motion for Summary Judgment** [#88] filed September 3, 2010.  Each of these four

motions has engendered the filing of responses and replies.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c);

**Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

**Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d

1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has

been properly supported, the burden shifts to the nonmovant to show, by tendering

depositions, affidavits, and other competent evidence, that summary judgment is not

proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

The individual defendants assert the defense of qualified immunity and they raise that defense as one of the bases for their motions for summary judgment.  A motion for summary judgment asserting qualified immunity must be reviewed differently from other summary judgment motions.  **See Saucier v. Katz**, 533 U.S. 194, 201 (2001), **overruled in part, Pearson v. Callahan**, ___ U.S. ___, 129 S. Ct. 808 (2009); **Holland v. Harrington**, 268 F.3d 1179, 1185 (10th Cir. 2001), **cert. denied**, 535 U.S. 1056 (2002).  After a defendant asserts qualified immunity, the burden shifts to the plaintiff.  **Scull v. New Mexico**, 236 F.3d 588, 595 (10th Cir. 2000).  To overcome a claim of qualified immunity, the plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right."  **Albright v. Rodriguez**, 51 F.3d 1531, 1534 (10th Cir. 1995); **Wilson v. Layne**, 526 U.S. 603, 609 (1999).  This burden means coming forward with specific facts establishing the violation.  **Taylor v. Meacham**, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.  **Albright**, 51 F.3d at 1534.  To demonstrate

clearly established law, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992), *overruled in part, Williams v. City & County of Denver*, 99 F.3d 1009, 1014 - 1015 (10th Cir. 1996). The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited. *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)). In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615. However, the plaintiff need not establish a "'precise factual correlation between the then-existing law and the case at hand . . . .'" *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992), (quoting *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir. 1990)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations and citations omitted).

If the plaintiff satisfies both of these elements, then the burden shifts to the defendant. Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th

Cir.1991).  If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the

court must grant qualified immunity.  *Albright*, 51 F.3d at 1535.  In short, although the

court must review the evidence in the light most favorable to the plaintiff, a defendant's

assertion of qualified immunity may be overcome only when the record demonstrates

clearly that the plaintiff has satisfied his heavy two-part burden.  In civil rights cases, a

defendant's unlawful conduct must be demonstrated with specificity.  *Davis v. Gracey*,

111 F.3d 1472, 1478 (10th Cir. 1997).

In a recent opinion, the United States Supreme Court altered somewhat the

analytical process that may be used when a defendant claims the protection of qualified

immunity.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009).  Under *Saucier*

*v. Katz*, a court addressing a claim of qualified immunity first must determine whether

the plaintiff has adduced facts sufficient to make out a constitutional or statutory

violation.  *Saucier*, 533 U.S. at 201.  Under *Saucier*, a court must address and resolve

this first question before proceeding to the second step of the analysis, a determination

of whether the claimed constitutional or statutory right was established clearly at the

time of the alleged violation.  *Id*.  In *Pearson*, the Supreme Court held that the

sequential two step analysis mandated in *Saucier*

> should no longer be regarded as mandatory.  The judges of the district
> courts and the courts of appeals should be permitted to exercise their
> sound discretion in deciding which of the two prongs of the qualified
> immunity analysis should be addressed first in light of the circumstances
> in the particular case at hand.

*Pearson*, 555 U.S. 223, ___, 129 S.Ct. 808, 818 (2009).  The Supreme Court noted,

however, that the sequence set forth in *Saucier* often is the appropriate analytical

sequence.  *Id*.

## IV.  PLAINTIFFS' CLAIMS

In their complaint [#1], the plaintiffs, Jeremy C. Myers and Great Western Salvage Ltd., assert five claims under 42 U.S.C. § 1983 for alleged violations of their constitutional rights by the defendants.  In early September, 2007, certain of the defendants obtained a search warrant for Myers' residence.  The plaintiffs allege that defendant, Brian Koopman, a detective with the Police Department of Loveland, Colorado, "intentionally and/or recklessly made false and misleading statements" in the affidavit he executed in support of his request for a no-knock search warrant for Myers' property.  *Complaint* [#1], ¶¶  23 - 25.  A Colorado district judge issued a no-knock search warrant, based on Koopman's affidavit.

On September 6, 2007, using the authority granted to them in the no-knock search warrant, certain of the defendants conducted a no knock search of Myers' residence and of a building located near to Myer's residence.  The plaintiffs refer to the building near to Myers' residence as the White Building.  The plaintiffs allege that they did not own or occupy the White Building and did not have access to that building.  The defendants who conducted the search found a jar of white substance in the White Building, which they removed from the building.  Two field tests of substances seized during the search showed that the substances tested presumptively positive for amphetamine, a component of methamphetamine.  *Motion for summary judgment* [#56], Koopman affidavit [#56-1], ¶ 15.  The search was conducted by the Loveland Police Department with assistance from the Larimer County Sheriff's Office and the Fort Collins Police Department.  The Loveland Police, the Fort Collins Police, and the Larimer County Sheriff all are participants in the Larimer County Drug Task Force (LCDTF), and the LCDTF participated in the search at issue in this case.

Based on this search, certain of the defendants obtained an arrest warrant for

plaintiff, Jeremy Myers.  Myers surrendered and was arrested on September 7, 2007.
Myers was charged with certain drug crimes in state court.  Ultimately, tests on the
items seized during the search demonstrated that no unlawful controlled substances
were found during the search.  The criminal charges against Myers were dismissed on
November 15, 2007.

Based on these allegations, and others, the plaintiffs assert five claims for relief
in their Complaint [#1]: (1) a Fourth Amendment claim for unreasonable search and
seizure, asserted against all defendants, except Abrahamson; (2) a claim, asserted by
plaintiff Myers only, for malicious prosecution asserted under the Fourth and Fourteenth
Amendments, asserted against all defendants; (3) a claim for use of excessive force in
conducting the search, asserted against all defendants, except Abrahamson; (4) a claim
for failure to train or supervise the other defendants, which failures allegedly caused the
constitutional violations alleged in the complaint, asserted against the cities of Loveland
and Fort Collins, Colorado, the chiefs of the Loveland and Fort Collins police
departments, the Larimer County Sheriff, Larry Abrahamson, the District Attorney for the
Eight Judicial District of Colorado, and Larimer County ; (5) a claim alleging conspiracy
by all of the defendants to violate the plaintiffs' civil  rights.  The plaintiffs bring these
claims under 42 U.S.C. § 1983.

In orders [#99 & #118] addressing motions to dismiss filed by the defendants, I
dismissed with prejudice the plaintiffs' first and third claims as alleged against each of
the defendants.  In addition, I dismissed all of the plaintiff's claims asserted against
Koopman, Hecker, and Harrison as asserted against those defendants in their official
capacities.  Thus, I do not address in this order the plaintiffs' first and third claims or the
plaintiffs' claims against Koopman, Hecker, and Harrison in their official capacities.

In my earlier orders [#99 & #118], I concluded also that the plaintiffs have not pled adequately their second, fourth, and fifth claims for relief.  However, I deferred a determination as to whether the plaintiffs should have an opportunity to amend their complaint pending determination of the individual defendants' entitlement to qualified immunity.  The qualified immunity issues are raised in the now-pending motions for summary judgment.

## V.   MOTIONS FOR SUMMARY JUDGMENT OF HECKER, KOOPMAN, & HARRISON

In their motion for summary judgment [#56], defendants, Luke Hecker, the Chief of the Loveland Police Department, and Brian Koopman, a Detective with the Loveland Police Department, argue that they are entitled to summary judgment on the plaintiffs' remaining claims, their second, fourth, and fifth claims, because Hecker and Koopman are entitled to qualified immunity as to these claims.  In his motion for summary judgment [#74], defendant, Dennis Harrison, the Chief of the Fort Collins Police Department, argues that he is entitled to summary judgment on the plaintiffs' remaining claims because Harrison is entitled to qualified immunity as to these claims.

Discovery concerning the plaintiffs' claims against Hecker, Koopman, and Harrison has been stayed while their motion for summary judgment has been pending. I have reviewed carefully the motions, responses, replies, and Hecker's and Koopman's supplement [#93] to their motion, which Harrison joined [#103].  Considering the issues raised in these filings, I conclude that the plaintiffs have not had a sufficient opportunity to conduct discovery necessary for the plaintiffs to uncover facts relevant to the qualified immunity claims of Hecker, Koopman, and Harrison.  In these circumstances, discovery that is tailored narrowly to determine only those facts needed to resolve the qualified

immunity claims is appropriate.  ***See, e.g., Hansen v. PT Bank Negara Indonesia (Persero), TBK***, 601 F.3d 1059, 1064 (10th Cir. 2010); ***Maxey by Maxey v. Fulton***, 890 F.2d 279, 282 (10th Cir. 1989).  Therefore, I deny without prejudice Hecker and Koopman's motion for summary judgment and Harrison's motion for summary judgment.

In light of the fact that Hecker's and Koopman's motion for summary judgment [#56] and Harrison's motion for summary judgment [#74] do not resolve the qualified immunity issue as to these defendants, I grant these defendants' motions to dismiss [#14 & #22] as to the plaintiffs' second, fourth, and fifth claims for relief.  As a result of this dismissal, I will provide the plaintiffs with an opportunity to file an amended complaint and to plead these claims adequately.  If the plaintiffs file an amended complaint, and they plead one or more of these claims adequately, then I will direct that discovery narrowly tailored to the qualified immunity issues be conducted.  After that discovery is complete, defendants Hecker, Koopman, and Harrison may renew their motions for summary judgment asserting the defense of qualified immunity.

## VII.  LARIMER COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants associated with Larimer County are James Alderden, the Sheriff of Larimer County, Larry Abrahamson, the District Attorney for the Eighth Judicial District, the Larimer County Board of County Commissioners, and the Eighth Judicial District of Colorado.  In a jointly filed motion, each of these defendants has moved for summary judgment.

### A.  Sheriff Alderden

The plaintiffs assert claims against Sheriff Alderden in his individual and official capacities.  Alderden argues that the plaintiffs have not come forward with evidence

sufficient to sustain their claims against him and that he is entitled to qualified immunity.

Unlike the other individual defendants, Alderden has responded to the plaintiffs'

discovery requests and has made discovery requests of the plaintiffs.  Alderden is

named as a defendant in Myers' malicious prosecution claim.  Alderden is named also

as a defendant in the plaintiffs' claims alleging that the defendants failed adequately to

train and supervise their subordinates, and their claim that the defendants conspired to

violate the plaintiffs' civil rights.

     i.  Malicious Prosecution -  The elements of a malicious prosecution claim,

applicable to a claim under § 1983 claim, are

> (1) the defendant caused the plaintiff's continued confinement or
> prosecution; (2) the original action terminated in favor of the plaintiff; (3)
> there was no probable cause to support the original arrest, continued
> confinement, or prosecution; (4) the defendant acted with malice; and (5)
> the plaintiff sustained damages.

***Novitsky v. City Of Aurora***, 491 F.3d 1244, 1258 (10th Cir. 2007).  The undisputed

facts in the record show that Alderden was advised that a search warrant had been

issued for Myers' residence and that, under the circumstances reported to Alderden,

use of a SWAT team was necessary to execute the warrant.  Relying on this

information, Alderden authorized the use of SWAT team members from the Larimer

County Sheriff's Office.  There is no evidence that Alderden participated in obtaining the

search warrant.  Alderden did not participate in the search and did not participate in the

prosecution of criminal charges against Myers.  Myers does not cite any other evidence

in support of his malicious prosecution claim against Alderden.  Given these undisputed

facts, no reasonable fact finder could conclude that Alderden caused the plaintiff's

prosecution or that Alderden acted with malice toward Myers.  Alderden is entitled to

summary judgment on Myers' malicious prosecution claim.

I note that, as alleged against Alderden, Myers' malicious prosecution claim is alleged primarily as a supervisory liability claim based on Alderden's alleged promulgation and enforcement of policies and on Alderden's alleged failure adequately to train and supervise his subordinates.  As discussed below, Alderden is entitled to summary judgment on the plaintiffs' supervisory liability claims.  On that basis, Alderden is entitled to summary judgment on Myers' malicious prosecution claim when that claim is viewed from the perspective of a supervisory liability claim.

I note also that there is substantial evidence to support the defendants' contention that there was probable cause to support Myers' arrest.  If that is true, then Myers' malicious prosecution claim fails, of course.  However, Myers' contends that Koopman, a member of the Loveland Police Department, knowingly included false information in the warrant affidavit and that, absent the false information, there was not probable cause for the search or for Myers' arrest.  That issue is yet to be resolved.  No matter how that question is resolved, however, Alderden is entitled to summary judgment on the malicious prosecution claim.

ii.  Supervisory Liability -   The plaintiffs describe their supervisory liability claims against Alderden as alleging that Alderden failed adequately to train or supervise his subordinates, to whom Alderden assigned duties related to the search of the plaintiffs' property and that Alderden has "long standing department-wide customs and policies, or actual practices that allowed the violations complained of in the complaint to occur." *Response* [#97], p. 4.

In their complaint [#1], the plaintiffs allege that Alderden maintains policies, procedures, customs, and practices that authorize explicitly (1) search warrant affidavits containing false and misleading information; (2) affidavits that contain perjured

testimony; (3) unsupervised conduct of the LCDTF; (4) unreasonable no-knock searches based on flawed warrants; (5) malicious prosecution against Myers; (6) use of excessive force. *Complaint* [#1], ¶¶ 84 - 89. The plaintiffs allege also that the defendants' failure to train and supervise their subordinates caused the plaintiffs to suffer the violations of their rights listed above. *Id.*

The precise requirements for pleading and establishing a supervisory liability claim under § 1983 have been in question somewhat following the opinion of the United States Supreme Court in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009). However, the United States Court of Appeals for the Tenth Circuit has held that § 1983 claims imposing supervisory liability remain viable under *Iqbal* if the specific pleading and proof requirements are met. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). A plaintiff may establish § 1983 claim against a defendant-supervisor by showing: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the complained of constitutional harm; and (3) the defendant acted with the state of mind required to establish the alleged underlying constitutional deprivation. *Dodds*, 614 F.3d 1199 - 1200. The *Dodds* court declined to address claims seeking to impose supervisory liability on other theories, including a supervisor's failure to train. *Id.* at 1202. In *Porro v. Barnes*, the Tenth Circuit indicated that a failure to train claim may be viable after *Iqbal*. 624 F.3d 1322, 1327 -1329 (10th Cir. 2010). Notably, a failure to train theory has been seen as a supervisory liability claim that, at bottom, implicates a supervisor's implementation of a policy. *Dodds*, 614 F.3d at 1209 (Tymkovich, J., concurring).

*Iqubal* created also some new questions about the state of mind a plaintiff must show to establish supervisory liability under § 1983. *Dodds*, 614 F.3d at 1204.  In *City of Canton v. Harris*, the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388 (1989).  After *Iqubal*, a plaintiff does not necessarily need to show that a supervisory defendant acted or failed to act with knowledge of or deliberate indifference to the fact that a constitutional violation would occur at the hands of the supervisor's subordinates. *Dodds*, 614 F.3d at 1204.  The *Iqubal* court concluded that the state of mind required to establish a *Bivens* claim based on supervisory liability, which claims are directly analogous to § 1983 claims, is the state of mind requirement that is tied to the underlying constitutional provision at issue. *Iqubal*, ___ U.S. at  ___ , 129 S.Ct. at 1948 (*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)); *Dodds*, 614 F.3d at 1204 -1205. In *Porro*, the Tenth Circuit clarified this issue as to supervisory liability claims.  To establish a violation of § 1983 by a supervisor, the plaintiff must, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights. *Porro v. Barnes*, 624 F.3d 1322, 1327 -1328 (10th Cir. 2010).

In this case, the violations of the plaintiffs' rights which allegedly were caused by the alleged failure to train and supervise, and by the enforcement of policies and practices, are the alleged unreasonable search of Myers' house, the alleged use of excessive force during the search, and the alleged malicious prosecution of Myers.  For the purpose of analyzing the plaintiffs' claims based on Alderden's alleged failure to

train and supervise, I assume, without deciding, that there is evidence that arguably shows that the plaintiffs' constitutional rights were violated.  Even if I indulge this assumption, I conclude that the plaintiffs have not come forward with evidence that would permit a reasonable finder of fact to conclude that Alderden enforced policies and practices that caused the alleged violations or that Alderden trained or failed to train his subordinates in a way that caused the alleged constitutional violations.

In discovery, the plaintiffs sought from Alderden a copy of the LCDTF's policies, rules, and regulations.  Alderden responded that the Larimer County Sheriff does to have those records.  *Reply* [#104], Exhibit A-3 (Alderden's response to interrogatories), interrogatories 6, 7, 8.  Alderden says in his reply [#104] that the plaintiff obtained a copy of these policies from defendant Abrahmson, but Alderden does not cite anything in the record that supports this contention.  If the plaintiffs did not obtain a copy of those policies, policies relevant to their claims, nothing in the record indicates why the plaintiffs could not obtain a copy of those policies from the LCDTF.  In response to Alderden's motion for summary judgment, the plaintiff cites evidence that Alderden is a member of the board of the LCDTF, and the board is required to meet regularly to formulate policy and provide direction to the task force.  *Response* [#97], p. 4.  The plaintiffs cite no other evidence in support of their policy allegations against Alderden.

The evidence cited by the plaintiffs would not permit a reasonable fact finder to conclude that Alderden created or enforced any particular policy and that such a policy caused the complained of constitutional harms.  ***Dodds***, 614 F.3d 1199 - 1200.  Further, the plaintiffs cite no evidence that tends to show a deliberate and intentional act on the part of Alderden to violate the plaintiffs' legal rights.  ***Porro v. Barnes***, 624 F.3d at 1327 -1328.  Thus, Alderden is entitled to summary judgment on the plaintiffs'  supervisory

liability claim based on Alderden's alleged role in creating and enforcing policy.

In discovery, the plaintiffs sought from Alderden information about the training completed by members of the LCDTF concerning the use of field tests. *Reply* [#104], Exhibit A-1 (plaintiffs' request for production).  In response, Alderden identified the one employee of the Larimer County Sheriff's Office who assisted in the field testing conducted during the search in question and stated that Alderden does not have records of training for that individual specific to field testing. *Id.*, Exhibit A-3 (Alderden's response to request for production), request 1.  In response to interrogatories, Alderden said that training for field testing is "provided on the job by the LCDTF." *Id.*, Exhibit A-2 (Alderden's response to interrogatories), interrogatory 1.  Alderden stated that the Larimer County Sheriff's Office does not have training manuals or materials used to train members of the LCDTF concerning field testing. *Id.*, Exhibit A-3 (Alderden's response to request for production), request 2.  The only training records requested by the plaintiffs that were not limited to field testing of evidence are the training records for Lt. Robert Cook.  Alderden provided those records. *Id.*, Exhibit A-2 (Alderden's response to interrogatories), interrogatory 7.

In response to Alderden's motion for summary judgment, the plaintiffs argue that the "lack of ANY documentation as to how Defendant Alderden met his obligations to supervise and train in itself raises a genuine issue as to these material facts of both participation and a causal link." *Response* [#97], p. 7 (emphasis in original).  I disagree. The plaintiffs sought information about the training Alderden provided to one officer, Robert Cook, without specifying the topic of the training.  That information was provided to the plaintiffs and none of that information is cited in the plaintiffs' response to Alderden's motion for summary judgment.  Otherwise, the plaintiffs sought from

Alderden only information about training provided concerning field testing.  In essence, Alderden responded that field testing training is provided on the job by the LCDTF.  This evidence might invite speculation about the nature of the training provided by the LCDTF or about how different or additional training might be preferable, but this evidence does not support the contention that there was a complete failure to train by Alderden or that the training provided was so flawed that it caused the constitutional violations allegedly suffered by the plaintiffs.  The plaintiffs fail to cite evidence of particular, relevant training or relevant flaws in that training.  Further, with regard to the failure to train claim, the plaintiffs cite no evidence that tends to show a deliberate and intentional act on the part of Alderden to violate the plaintiff's legal rights.  ***Porro v. Barnes***, 624 F.3d at 1327 - 1328.  Accordingly, Alderden is entitled to summary judgment on the plaintiffs' policy claim.

iii.  Conspiracy - In their fifth claim for relief, the plaintiffs claim that all of the defendants conspired to violate the plaintiffs' civil rights.  A plaintiff asserting such a conspiracy claim is required to "allege [and prove] specific facts showing an agreement and concerted action amongst the defendants." ***Tonkovich v. Kan. Bd. of Regents***, 159 F.3d 504, 533 (10th Cir. 1998).  As I noted in my previous order [#99], addressing the plaintiffs' conspiracy allegations:

> The plaintiffs lump the defendants together as a generalized group, allege that the group conspired to violate the plaintiffs' rights, and caused violations of the plaintiffs' rights.  *Complaint* [#1], ¶¶ 95 - 97.  Nowhere in the complaint do the plaintiffs cite factual details in support of these conclusory contentions.  The plaintiffs allegations in support of their fourth and fifth claims "do not permit the court to infer more than the mere possibility of misconduct . . . ." ***Iqubal***, ___ at ___, 129 S.Ct at 1950. The plaintiffs' generalized conclusions are not supported by sufficient factual allegations. ***Id***.

Having completed discovery as to Alderden, the plaintiffs cite no evidence that

would permit a reasonable finder of fact to conclude that Alderden agreed with any other defendants to take the actions that allegedly caused a violation of the plaintiffs' rights, or that he undertook concerted action with any other defendant in an effort to violate the plaintiffs' rights.  Therefore, Alderden is entitled to summary judgment on the plaintiffs' conspiracy claim.

iv.  Qualified Immunity - To overcome Alderden's claim of qualified immunity, the plaintiffs must establish that Alderden's actions violated a constitutional or statutory right of the plaintiffs and that the right at issue was clearly established *at the time* of Alderden's alleged unlawful conduct. ***Albright v. Rodriguez***, 51 F.3d 1531, 1534 (10th Cir. 1995).  The plaintiffs have not established that Alderden violated a constitutional or statutory right of the plaintiffs.  Therefore, Alderden is entitled to qualified immunity as to each of the plaintiffs' remaining claims, their second, fourth, and fifth claims.

v.  Conclusion - The plaintiffs assert the three claims discussed above against Alderden in both his individual and official capacities.  For the reasons detailed above, I conclude that Alderden is entitled to judgment as a matter of law on each of those claims, as asserted against Alderden in both his individual and official capacities.

### B.  Larry Abrahamson

Defendant, Larry Abrahamson, is the District Attorney for the Eighth Judicial District of Colorado.  The plaintiffs name Abrahamson as a defendant in his official capacity only.  A claim against Abrahamson in his official capacity is, in effect, a ***Monell*** claim against the entity of which Abrahamson is an officer.  ***Monell v. New York City Dep't of Social Servs.***, 436 U.S. 658, 690 n. 55 (1978).  A plaintiff may establish a ***Monell*** claim only by proving that the enforcement of an entity's policies or customs by its employees caused a deprivation of a plaintiff's federally protected rights.  ***Dodds v.***

17

*Richardson*, 614 F.3d at 1202.  The plaintiff must show that the entity's action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the entity's action and the deprivation of federal rights.  *Id*.  These requirements are analogous to the requirements for proving a supervisory liability claim, as detailed above in the discussion of the claims against Alderden.

In his motion for summary judgment, Abrahamson argues that the plaintiffs have not come forward with sufficient evidence to support their policy or failure to train claims against Abrahamson.  I agree.  The plaintiffs cite Abrahamson's discovery response indicating that he does not have records of the policies, procedures, rules, or regulations promulgated by the LCDTF.  The plaintiffs note also that Abrahamson said in discovery that his office offers training to the LCDTF, but he did not produce records of such training.  *Response* [#97], pp. 10 - 11.  As with Alderden, the fact that Abrahamson participates in formulating LCDTF policy and the fact that Abrahamson's office offers training to the LCDTF is not sufficient to support the plaintiffs' *Monell* claims against Abrahamson.  The plaintiffs fail to cite evidence of particular relevant polices, particular relevant training, and relevant flaws in such policies or training.  A general contention that policies or training are inadequate is not sufficient to establish the plaintiffs' claims.  Further, with regard to the policy and failure to train claims, the plaintiffs cite no evidence that tends to show a deliberate and intentional act on the part of Abrahamson to violate the plaintiff's legal rights.  *Porro v. Barnes*, 624 F.3d at 1327 - 1328.  Thus, Abrahamson is entitled to summary judgment on the plaintiffs' policy and failure to train claims.

The plaintiffs do not allege their conspiracy claim as a supervisory liability claim, but they assert this claim against Abrahamson in his official capacity only.  In this

circumstance, the plaintiffs' conspiracy claim against Abrahamson must be seen as a *Monell* claim against the Office of the District Attorney.  As discussed above, a plaintiff alleging a conspiracy claim is required to "allege [and prove] specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  In this case, the plaintiff has not cited any evidence sufficient to permit a reasonable fact finder to conclude that Abrahamson agreed with any other defendants to take the actions that allegedly caused a violation of the plaintiffs' rights or that he undertook concerted action with any other defendant.  Therefore, Abrahamson is entitled to summary judgment on this claim.

In his motion to dismiss [#16], Abrahamson argues that he is shielded from the plaintiffs' claims by prosecutorial immunity.  To the extent the plaintiffs' claims concern actions allegedly taken by Abrahamson as an investigator or as an administrator, prosecutorial immunity does not shield Abrahamson from such claims.  *Van de Kamp v. Goldstein*, ___ U.S. ___, ___, 129 S.Ct. 855, 861 (2009).  On the other hand, prosecutorial immunity is applicable to actions taken by a prosecutor when the actions in question are intimately associated with the judicial phase of the criminal process.  *Id*. For example, preparations to initiate a judicial proceeding or an appearance in court to present evidence in support a search warrant application are actions protected by prosecutorial immunity.  *Id*.  Even following discovery, the precise actions taken by Abrahamson which the plaintiffs claim violated their rights are far from clear.  It is likely that at least some of those actions are within Abrahamson's prosecutorial immunity. However, because the claims against Abrahamson have been resolved on other grounds, I do not address the prosecutorial immunity issue.

### C.  Board of County Commissioners of Larimer County

The plaintiffs name Larimer County as a defendant, by and through the Larimer County Board of County Commissioners (BOCC).  The BOCC argues that it does not have the authority to supervise the activities of the Larimer County Sheriff and, therefore, the BOCC cannot be held liable for actions taken by the sheriff.  The statutory powers of the BOCC are specified in §30-11-107, C.R.S.   Although it is undisputed that the BOCC has the duty and authority to appropriate funds for the operation of the sheriff's office, under Colorado law only a sheriff has the right to supervise and control the sheriff's deputies. *Tunget v. Board of County Com'rs of Delta County*, 992 P.2d 650, 652 (Colo. App.1999); *see Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002).  Thus, I conclude that the BOCC does not have the legal authority to control or supervise the sheriff and the sheriff's deputies. *Id*.

In response to the BOCC's motion, the plaintiffs argue that the BOCC's duty and authority to appropriate funds for the sheriff demonstrates that the BOCC has control over the sheriff and can be subject to supervisory liability for actions take by the sheriff or his deputies.  In exercising its control over funding, the plaintiffs argue, the BOCC has

> a duty under the statute to make sure that no funds are used which would cause a violation of constitutional rights through the implementation of, or failure to implement, policies practices and customs.  If the Board has no review process, and knowingly approves funds to settle claims arising from constitutional violations without any attempt to identify and remedy the erroneous policy or procedure, then they are liable.

*Response* [#97], p. 8.  I disagree.

Even if the legal proposition stated by the plaintiffs was accurate, the plaintiffs do

not cite in their response any evidence to support their apparent contention that the BOCC has approved funds to settle claims arising from constitutional violations, but has failed to remedy purportedly erroneous policies and procedures tied to the violations. Even if I assume that the BOCC has some supervisory authority over the sheriff and his deputies, the plaintiff has not cited any evidence that arguably establishes a *Monell* claim against the BOCC.  Again, a plaintiff may establish § 1983 claim against a defendant-supervisor by showing: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the complained of constitutional harm; and (3) the defendant acted with the state of mind required to establish the alleged constitutional deprivation.  *Dodds v. Richardson*, 614 F.3d 1185, 1199 - 1200 (10th Cir. 2010).  With regard to the BOCC, the plaintiffs have not cited any evidence that tends to establish any of these three elements.  Given that evidentiary landscape, I conclude that no reasonable fact finder could find in favor of the plaintiffs on their *Monell* claims against the BOCC.

Addressing the conspiracy claim, the BOCC argues that its funding of the sheriff's office is not a sufficient evidentiary basis to support the conspiracy claim as to the BOCC.  As discussed above, a plaintiff alleging a conspiracy claim is required to "allege [and prove] specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  In this case, the plaintiffs have not cited any evidence sufficient to permit a reasonable fact finder to conclude that the BOCC agreed with any other defendants to take the actions that allegedly caused a violation of the plaintiffs' rights or that the BOCC undertook concerted action with any other defendant.  Therefore, the BOCC is entitled to summary judgment on the plaintiffs' conspiracy claim.

### D.  Eighth Judicial District

The Eighth Judicial District of the State of Colorado is a political subdivision of the State of Colorado.  *Davidson v. Sandstrom*, 83 P.3d 648, 656 (Colo. 2004) (judicial district is a political subdivision for purposes of applying term limits of Colorado Constitution).  Political subdivisions of the State of Colorado have only the powers conferred on the subdivision by the state.  *Board of County Com'rs of County of Adams, State v. Colorado Dept. of Public Health and Environment*, 218 P.3d 336, 344 - 345 (Colo. 2009) (counties are political subdivisions of state; political subdivisions have only those powers that are expressly granted to them by the Colorado Constitution or by the General Assembly); *Board of Com'rs of Phillips County v. Churning*, 35 P. 918, 918 (Colo. App. 1894) (Colorado county is a political subdivision of state which can sue and be sued "only by virtue of statutory enactment that any action can be maintained, either in its behalf or against it").  Under Colorado law, the Eighth Judicial District does not have the power to sue or be sued.  *Colo. Const.* Art. VI, §10; §§13-5-101, 109, C.R.S.  Thus, the Eighth Judicial District is not a proper defendant in this case and is entitled to summary judgment.

Even if the Eighth Judicial District were a proper defendant, I conclude that it is entitled to summary judgment because the plaintiffs have not come forward with evidence that demonstrates that there exists a genuine issue of material fact relevant to the plaintiffs' claims against the Eighth Judicial District.  This is true for the reasons detailed above concerning the claims asserted against Abrahamson and the BOCC. The plaintiffs have not cited any evidence sufficient to permit a reasonable fact finder to conclude that the Eighth Judicial District is liable to the plaintiffs on any of the claims asserted against the Eighth Judicial District.

## VIII.  CITIES OF LOVELAND AND FORT COLLINS

Although the cities of Loveland and Fort Collins are not entitled to qualified immunity, discovery has been stayed as to Loveland and Fort Collins.  Because the plaintiffs have not had an opportunity to conduct discovery concerning their claims against Loveland and Fort Collins, I conclude that it is not appropriate to determine whether or not there are genuine issues of material fact concerning the plaintiffs' claims against Loveland and Fort Collins.  Therefore, I deny without prejudice the motions for summary judgment filed by Loveland and Fort Collins.

The motions to dismiss [#14 & #22] filed by Loveland and Fort Collins both asserted that the allegations in the plaintiffs' complaint are not sufficient to state claims on which relief can be granted against Loveland and Fort Collins.  For the reasons stated in my earlier order [#99] addressing these motions to dismiss, I conclude that the allegations in the plaintiffs' complaint concerning their second, fourth, and fifth claims are not sufficient to state claims on which relief can be granted.  Therefore, I grant the motions to dismiss [#14 & #22] as to the second, fourth, and fifth claims as asserted against Loveland and Fort Colllins.  As a result of this dismissal, I will provide the plaintiffs with an opportunity to file an amended complaint to attempt to plead these claims adequately.  If the plaintiffs file an amended complaint, and they plead one or more of these claims adequately, then I will direct that discovery concerning any pending claims be conducted.  After that discovery is complete, Loveland and Fort Collins may renew their motions for summary judgment.

## IX.  CONCLUSION AND ORDERS

Viewing the evidence in the record in the light most favorable to the plaintiffs, I conclude that no reasonable fact finder could find in favor of the plaintiffs on their claims

against defendants, Alderden, Abrahamson, the Larimer County Board of County Commissioners, and the Eighth Judicial District.  Thus, the motion for summary judgment filed jointly by these defendants is granted.

The qualified immunity claims of defendants, Hecker, Koopman, and Harrison, cannot be resolved absent discovery that is tailored narrowly to determine only those facts needed to resolve the qualified immunity claims.  Therefore, the motions for summary judgment of defendants, Hecker, Koopman, and Harrison, are denied without prejudice, pending the completion of such discovery.

I conclude next that it is not appropriate to resolve the motions for summary judgment of the cities of Loveland and Fort Collins until the plaintiffs have had an opportunity to conduct discovery sufficient to permit the plaintiffs to respond to the motion for summary judgment with citation to relevant evidence.  Therefore, the motions for summary judgment of Loveland and Fort Collins are denied without prejudice pending the completion of discovery as to these defendants.

Finally, the motions to dismiss filed by defendants, Hecker, Koopman, Harrison, Loveland, and Fort Collins, are granted. However, the plaintiffs are granted an opportunity to file an amended complaint to attempt to remedy the defects in their current complaint. Although discovery focused on the qualified immunity issues and the issues related to the claims against Loveland and Fort Collins ultimately may be appropriate, such discovery is not appropriate unless the plaintiffs file an amended complaint that includes allegations sufficient to state one or more claims on which relief can be granted. Therefore, I continue the extant stay of discovery in this case pending the filing of an amended complaint by the plaintiffs and, if necessary, a determination of whether the allegations in the amended complaint satisfy the applicable pleading

standards.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendants Koopman and Hecker's Motion for Summary judgment Based Upon Qualified  Immunity** [#56] filed April 20, 2010, is **DENIED** without prejudice pending the completion of discovery that is tailored narrowly to determine only those facts needed to resolve the qualified immunity claims of defendants, Brian Koopman and Luke Hecker;

2.  That **Dennis V. Harrison and the City of Fort Collins' Motion for Summary Judgment** [#74] filed June 11, 2010, is **DENIED** without prejudice as to the claims against defendant, Dennis V. Harrison, pending the completion of discovery that is tailored narrowly to determine only those facts needed to resolve the qualified immunity claim of defendant, Dennis V. Harrison;

3.  That **Dennis V. Harrison and the City of Fort Collins' Motion for Summary Judgment** [#74] filed June 11, 2010, is **DENIED** without prejudice as to the claims against the City of Fort Collins pending the completion of discovery on those claims;

4.  That  **Defendant James A. Alderden, Larimer County, Larimer County Board of County Commissioners, Larry Abrahamson and Eighth Judicial District of Colorado's Motion for Summary Judgment** [#86] filed September 1, 2010, is **GRANTED**;

5.  That accordingly, the plaintiffs' second, fourth, and fifth claims are **DISMISSED WITH PREJUDICE** as to defendants, James A. Alderden, the Larimer County Board of County Commissioners, Larry Abrahamson, and the Eighth Judicial District of Colorado;

6.  That defendants, James A. Alderden, the Larimer County Board of County Commissioners, Larry Abrahamson, and the Eighth Judicial District of Colorado, are **DROPPED** from this action, and the caption of this case is **AMENDED** accordingly;

7.  That the **Defendant City of Loveland's Motion for Summary Judgment** [#88] filed September 3, 2010, is **DENIED** without prejudice as to the claims against the City of Loveland pending the completion of discovery on those claims;

8.  That under FED. R. CIV. P. 12(b)(6), the **Motion To Dismiss Claims Against Defendants Brian Koopman, Luke Hecker and City of Loveland** [#14] filed January 7, 2010, which motion previously was denied in part without prejudice, is **GRANTED** as to the plaintiffs' second, fourth, and fifth claims against defendants, Brian Koopman, Luke Hecker, and the City of Loveland;

9.  That under FED. R. CIV. P. 12(b)(6), **Defendants' Dennis V. Harrison and City of Fort Collins Joinder in Defendants Brian Koopman, Luke Hecker and City of Loveland's Motion to Dismiss** [#22] filed January 8, 2010, which motion previously was denied in part without prejudice, is **GRANTED** as to the plaintiffs' second, fourth, and fifth claims against defendants, Dennis V. Harrison and the City of Fort Collins;

10.  That the plaintiffs' second, fourth, and fifth claims are **DISMISSED WITHOUT PREJUDICE** as to defendants, Brian Koopman, Luke Hecker, Dennis V. Harrison, the City of Loveland, and the City of Fort Collins;

11.  That on or before March 3, 2011, the plaintiffs **MAY FILE** an amended complaint in an effort to remedy the extant pleading flaws in their second, fourth, and fifth claims for relief;

12.  That the plaintiffs **MAY NOT** re-assert  in any amended complaint their first

and third claims for relief, which claims were dismissed with prejudice;

      13.   That if the plaintiffs do not file an amended complaint, then the remaining claims against the remaining defendants **SHALL BE** dismissed; and

      14.   That discovery is **STAYED** pending the possible filing of an amended complaint by the plaintiffs and further order of this court.

      Dated February 11, 2011, at Denver, Colorado.

                              **BY THE COURT:**

.

                              Robert E. Blackburn
                              United States District Judge