**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 09-cv-02802-REB-MEH

JEREMY C. MYERS,

    Plaintiffs,

v.

BRIAN KOOPMAN, Detective in the Loveland, Colorado Police department, in his
    individual capacity, and
CITY OF LOVELAND, Colorado, a municipality,

    Defendants.

---

**ORDER CONCERNING DEFENDANTS' MOTION TO DISMISS**

---

**Blackburn, J.**

    This matter is before me on the **Defendants' Motion To Dismiss Plaintiff's Amended Complaint** [#128][1] filed March 11, 2011. The plaintiff filed a response [#135] and the defendants filed a reply [#136]. I grant the motion in part and deny it in part.

### I. JURISDICTION

    I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

    In considering a motion under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). I must accept all well-pleaded allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However,

---

[1] "[#128]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); ***see also Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 538 U.S. 999 (2003). I review the challenged portion of a complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570 (2007)); ***see also Ashcroft v. Iqbal***, ___ U.S. ___, 129 S.Ct. 1937 (2009). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." ***Id.*** (emphases in original).[2] Nevertheless,

---

[2] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974; internal citations and footnote omitted).

the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III.  FACTUAL ALLEGATIONS

In his amended complaint [#127], the plaintiff, Jeremy Myers, asserts a claim of malicious prosecution against the City of Loveland, Colorado, and Brian Koopman, a detective with the Loveland Police Department.  Myers alleges that on September 5, 2007, Koopman executed an affidavit in support of a no knock search warrant which later was executed at a property that had been occupied by Myers.  Myers alleges that Koopman "maliciously, intentionally and/or recklessly made false and misleading statements" in the affidavit.  *Plaintiff's Amended Complaint and Jury Demand* [#127], ¶ 14.  Allegedly, Koopman's false and misleading statements in the warrant affidavit included a representation that "an unnamed confidential informant indicated that a methamphetamine lab existed in the attic" of a building occupied by Myers, and that various other facts indicative of a methamphetamine lab existed on the premises.  *Id.*, ¶ 14 (A) through (M).  Myers alleges that Koopman knew that "the information given by his confidential informant . . was false." *Id.*, ¶ 41(a).  Koopman allegedly had two video surveillance cameras installed to monitor Meyer's property.  Myers alleges that one camera was installed in late May 2007, and the other was installed in mid-August 2007. *Id.* ¶¶ 12, 13.  According to Myers, the information captured by those cameras was inconsistent with much of the information contained in Koopman's affidavit.  *Id.*, ¶ 15.

Myers alleges that on September 5, 2007, Koopman obtained a no-knock search warrant for Myers' property based on the allegedly false and malicious statements in Koopman's affidavit. On Thursday, September 6, 2007, members of the Larimer County Drug Task Force along with the Larimer County and Loveland SWAT teams executed the no-knock warrant at Myers' property.  At the time of the search, seven field tests were conducted on suspected drugs found in the course of the search, and each test showed a false positive for the presence of an illegal drug.  Myers alleges that Koopman "fabricated the results maliciously or the [test] strips were intentionally and/or improperly used to achieve a malicious pre-determined goal." *Id.*, ¶ 37(h).  After the search was completed, Koopman allegedly prepared or endorsed an affidavit in support of a warrant for the arrest of Myers.  *Id.*, ¶ 34.  The affidavit allegedly contained false statements to support the issuance of an arrest warrant, and Koopman allegedly "acted maliciously, recklessly, knowingly, intentionally, willfully and wantonly" in preparing or endorsing the affidavit.

Myers was arrested on Friday, September 7, 2007, and was detained in the Larimer County Detention Center until Monday, September 10, 2007.  Criminal charges were filed against Myers and several hearings were held in his criminal case between September 7, 2007, and November 15, 2007.  Ultimately, testing conducted by the Colorado Bureau of Investigation demonstrated that no controlled substances were recovered from Myers' property or from the neighboring buildings that were searched on September 6, 2007.  The district attorney dropped all charges against Myers on November 15, 2007.

## IV.  ANALYSIS

Myers brings his malicious prosecution claim under 42 U.S.C. § 1983, alleging violation of his rights under the Fourth and Fourteenth Amendments.  Myers names Koopman and the City of Loveland as defendants.  The elements of a malicious prosecution claim, applicable to a claim under § 1983 claim, are:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

**Novitsky v. City Of Aurora**, 491 F.3d 1244, 1258 (10th Cir. 2007).  In the context of a § 1983 claim, however, a plaintiff also must establish the violation of one or more constitutional rights.  **See Mondragon v. Thompson**, 519 F.3d 1078, 1082 (2008) (§ 1983 claim for malicious prosecution ultimately must rest on the Constitution and not on common law).  The defendants argue in their present motion that the Myers' allegations are not sufficient to state a claim on which relief can be granted. I agree in part and disagree in part.

### A.  Municipal Liability

The defendants argue that Myers' allegations do not support a municipal liability claim against the City of Loveland.  A plaintiff suing a municipality under § 1983 for the actions of one of its police officers must prove: 1) that a municipal employee committed a constitutional violation; and 2) that a municipal policy or custom was the moving force behind the constitutional deprivation.  **Jiron v. City of Lakewood**, 392 F.3d 410, 419 (10th Cir. 2004).  A municipality or other local government unit is liable for constitutional torts only if the alleged unconstitutional acts implement a policy, ordinance or custom of the local government. **Monell v. Department of Social Services**, 436 U.S. 658, 690,

694 (1978); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 & n.4 (10th Cir. 1985). A municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions. *Monell*, 436 U.S. at 694; *see also D.T. v. Independent School District*, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

> A municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." An act committed by an official who has been delegated the power of "establishing final policy" will also constitute a municipal policy.

*Novitsky*, 491 F.3d 1244, at 1259 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A municipal custom is a persistent and widespread practice undertaken by municipal officials. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996).

In his response to the motion to dismiss, Myers argues that Koopman was in command of the no knock search and was the final decision maker for the City of Loveland. Myers relies on *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) to support his argument that Koopman's decisions about the search and subsequent events constitute decisions by a final decision maker for the City of Loveland. Myers

argues that this authority effectively was delegated to Koopman by the Chief of Police. As final decision maker, Myers argues, Koopman executed unconstitutional policies and customs which violated Myers' rights.

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481. Myers does not allege in the operative complaint that the Chief of Police had delegated to Koopman authority to establish final city policy about the search, nor does he allege other facts to support the contention that Koopman possessed final policy making authority for the city at the time of the search. Myers makes no allegation that the search was conducted in compliance with a widespread custom or practice of the City of Loveland. Even when the allegations in Myers' complaint are assumed to be true, those allegations do not state a claim for municipal liability against the City of Loveland. The motion to dismiss is granted as to the City of Loveland.

### B.  Fourteenth Amendment Claim

The defendants argue that Myers has not stated a malicious prosecution claim under the Fourteenth Amendment because all charges against Myers were dismissed before Myers was tried on those charges. Based on the law established by the United States Court of Appeals for the Tenth Circuit, I conclude that Myers has not stated a viable substantive due process claim under the Fourteenth Amendment. However, I conclude that Myers has stated a viable procedural due process claim under the Due Process Clause of the Fourteenth Amendment.

In *Taylor v. Meacham*, the United States Court of Appeals for the Tenth Circuit held that an allegedly wrongful arrest and seven-week detention can support a claim

under the Fourth Amendment, but does not support a Fourteenth Amendment substantive due process claim.  82 F.3d 1556, 1560 (10th Cir. 1996).  In *Taylor*, the Tenth Circuit noted the dictum of the United States Supreme Court that the Fourth Amendment governs pretrial deprivations of liberty while substantive due process does not govern pretrial deprivations of liberty.  *Id*. (citing *Albright v. Oliver*, 510 U.S. 266, 274 - 275 (1994) (plurality opinion).

In *Pierce v. Gilchrist*, the Tenth Circuit acknowledged the distinction drawn in *Taylor* between the Fourth and Fourteenth Amendments.   359 F.3d 1279, 1287 n. 5 (10th Cir. 2004).  In *Pierce*, however, the Tenth Circuit noted that a plaintiff asserting that he has been wrongfully detained based on "the fabrication of evidence by a government officer acting in an investigative capacity" may have claims implicating the Fourth and Fourteenth Amendments, depending on the circumstances.  "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Id*. at 1285 - 1286.  The *Pierce* court concluded that it did not need to determine where the Fourth Amendment analysis ends and the Fourteenth Amendment analysis begins. *Id*. at 1286.

Myers' claim involves only pretrial deprivation of liberty.  All charges filed against Myers were dismissed about six weeks after he was arrested and prior to any trial on those charges.  Given the Tenth Circuit's decision in *Taylor*, I conclude that a Fourteenth Amendment substantive due process analysis is not applicable to Myers' malicious prosecution claim.  Even when the allegations in Myers' complaint are assumed to be true, those allegations do not state a substantive due process claim

under the Fourteenth Amendment because Myers' allegations concern only a pretrial deprivation of liberty. The motion to dismiss is granted as to any Fourteenth Amendment substantive due process claim asserted by Myers.[3]

On the other hand, I conclude that Myers has stated a potentially viable Fourteenth Amendment procedural due process claim. In **Mondragon v. Thompson**, the Tenth Circuit acknowledged the distinction between a Fourth Amendment and Fourteenth Amendment analysis, as stated in **Pierce**. 519 F.3d 1078, 1082 (2008).

> We have held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." **Pierce v. Gilchrist**, 359 F.3d 1279, 1285-86 (10th Cir.2004). If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution. These torts are only analogies because § 1983 suits ultimately rest on the Constitution, not on state (or federal) common law. **Pierce**, 359 F.3d at 1285-88.

**Id**. The **Mondragon** court declined to determine precisely what distinguishes a Fourth Amendment claim from a Fourteenth Amendment claim in this context. **Id**. at 1083 n. 6.

In **Mondragon**, the court addressed primarily when the plaintiff's claims accrued for the purpose of the applicable statute of limitations. The defendants argue that the **Mondragon** court's analysis of the difference between claims under the Fourth and Fourteenth Amendments is dicta and otherwise is distinguishable from the present

---

[3] I note that Myers' Fourth Amendment claim is dependent on the Fourteenth Amendment because the Fourth Amendment is applicable to state actors only via the Due Process Clause of the Fourteenth Amendment. **See, e.g., Mapp v. Ohio**, 367 U.S. 643, 660 (1961).

case. I disagree. The *Mondragon* court analyzed the precise types of claims asserted by the plaintiff to determine when those claims accrued. *Id*. at 1083. A determination of the basis and proper constitutional analysis of the plaintiff's claims was a necessary step in determining when those claims accrued. Therefore, the *Mondragon* court's analysis of the nature of the Fourth and Fourteenth Amendment claims at issue in that case constitutes holding.[4]

In this case, Myers alleges that he was jailed based on legal but wrongful process when Koopman obtained search and arrest warrants based on information that Koopman knew to be false and materially incomplete. Given the analysis of the Tenth Circuit in *Mondragon*, I conclude that Myers has stated a viable procedural due process claim under the Fourteenth Amendment. The defendants' motion to dismiss is denied as to Myers' Fourteenth Amendment procedural due process claim.

### C.  Fourth Amendment Claim

Addressing Myers' Fourth Amendment claim, the defendants argue that Myers has not alleged specific facts to support his contention that Koopman[5] acted with malice in executing the affidavit in support of the no-knock search warrant, and in preparing or endorsing an affidavit in support of a warrant for Myers' arrest. I disagree. The defendants argue that Myers' allegations of malice are as general as they were in

---

[4] Dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved in nor essential to determination of the case in hand. Holding consists of those propositions along the chosen decisional path or paths of reasoning that 1) are actually decided; 2) are based on the facts of the case; and 3) lead to the judgment. *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009).

[5] I do not address the issue of malice as it concerns the City of Loveland because I have concluded that the plaintiff's allegations do not state a claim on which relief can be granted against the City of Loveland.

Myers' original complaint [#1].  Addressing the original complaint, I concluded previously that Myers' allegations on the element of malice were not sufficient because Myers made generalized allegations applicable to a group of defendants.  *Order Concerning Defendants' Motions To Dismiss* [#99], filed September 27, 2010, pp. 9 - 10.  In his present complaint [#127], Myers makes specific factual allegations about Koopman's actions, knowledge of relevant facts, and motivations at key points in time relevant to Myers' malicious prosecution claim.  *Plaintiff's Amended Complaint and Jury Demand* [#127], ¶¶ 14 - 16, 24 - 28, 37, 41.  Assuming these specific factual allegations about Koopman to be true, it is plausible that Myers can establish the malice element of a Fourth Amendment malicious prosecution claim.  The defendants' motion to dismiss is denied as to Myers' Fourth Amendment malicious prosecution claim.

### D.  Absolute Immunity

Finally, Koopman argues that he is entitled to absolute prosecutorial immunity to the extent Myers' malicious prosecution claim "focuses on Koopman's role in initiating and pursuing a criminal prosecution. . . ."  *Motion to dismiss* [#128], p. 13.

> [A] prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case. Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature, including the provision of legal advice outside the setting of a prosecution.

***Mink v. Knox***, 613 F.3d 995, 999 (10th Cir. 2010).  Pre-arrest review of a search warrant affidavit by a prosecutor, for example, does not fall within a prosecutor's role as an advocate and is not covered by prosecutorial immunity.  ***Mink v. Suthers***, 482 F.3d 1244, 1262 (10th Cir. 2007).  Given this law, and based on the allegations in the operative complaint, Koopman cannot be seen as having adopted the role of a

prosecutorial advocate and thereby gaining the benefit of prosecutorial immunity. The defendants' motion to dismiss based on the assertion of prosecutorial immunity is denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 12(b)(6), the **Defendants' Motion To Dismiss Plaintiff's Amended Complaint** [#128] filed March 11, 2011, is **GRANTED** as to the plaintiff's claim against defendant City of Loveland, Colorado, and the plaintiff's claim against the City of Loveland, Colorado, is **DISMISSED**;

2. That under FED. R. CIV. P. 12(b)(6), the **Defendants' Motion To Dismiss Plaintiff's Amended Complaint** [#128] filed March 11, 2011, is **GRANTED** to the extent that the plaintiff asserts a substantive due process claim under the Fourteenth Amendment;

3. That otherwise, the **Defendants' Motion To Dismiss Plaintiff's Amended Complaint** [#128] filed March 11, 2011, is **DENIED**;

4. That defendant City of Loveland, Colorado is **DROPPED** from this action, and the caption of this case is **AMENDED** accordingly; and

5. That the stay on discovery in this case is **LIFTED**.

Dated June 16, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge